UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL LAVAIL WALKER,

    Petitioner,

v.                                                    Case No. 2:12-cv-23
                                                       HON. GORDON J. QUIST

MICHAEL CURLEY,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted of armed robbery, assault with intent to do great bodily harm less than murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony in the Kent County Circuit Court on December 17, 2008. Petitioner was subsequently sentenced as a fourth habitual offender to a term of 28 to 50 years imprisonment.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals which was denied in an unpublished opinion on January 27, 2011. *People v. Walker*, No.292041, 2011 WL 255291, at *1, (Mich. Ct. App. Jan. 27, 2011). Petitioner's subsequent appeal to the Michigan Supreme Court was denied on June 28, 2011. Petitioner did not appeal to the United States Supreme Court.

Petitioner maintains that his conviction was obtained in violation of his federal rights. The instant habeas petition raises the following claims:

> I. There was insufficient evidence to support Petitioner's identity as the robber.
>
> II. The trial court improperly admitted other acts evidence under M.R.E. 404(b).
>
> III. The prosecutor improperly used Petitioner's post-arrest silence against him.
>
> IV. The cumulative effect of errors denied Petitioner a fair trial.

The Respondent has filed an answer to the petition and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. Respondent requests that the petition be denied because Petitioner's claims are without merit and do not entitle Petitioner to habeas relief.[1] In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state

---

[1] Additionally, the Respondent opposes any and all requests for evidentiary hearings and discovery. This Court must deny any attempt by Petitioner to supplement the state court record, whether through an evidentiary hearing, discovery, or presentation of new evidence in light of the United States Supreme Court precedent. Respondent opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. Furthermore, Respondent opposes any factual assertions made by Petitioner that are not directly supported by –or consistent with– the state court record, because Petitioner has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at

410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

The Michigan Court of Appeals summarized the facts as follows:

> Defendant's convictions arise from the robbery of Tillie's Market in Grand Rapids on February 18, 2008. The store clerk identified defendant as the robber. The clerk testified that he followed defendant outside the store and chased him as defendant fled on foot, and that during the chase defendant fired a gun at him. In addition to the clerk's testimony, defendant was connected to the robbery by eyewitness testimony and other evidence tracking his route from Tillie's to the nearby house where he was living. Specifically, police, with canine assistance, followed footprints in the snow leading from Tillie's toward defendant's home, and along the way, discovered assorted monies and a pack of cigarettes which was the same brand and bore the same tax code as those taken in the robbery. A search of defendant's residence uncovered clothing similar to that of the robber, more of the same incriminating cigarette packages and monies, and an operable handgun with four live rounds and one spent casing. Also, after defendant was arrested, he made several incriminating statements in a recorded telephone call to his mother from the jail in which he stated that he had "f***ed up big time," "I'm cooked," that he "didn't know they had all that other sh*t" and "he should have

> shot it out with them." The prosecutor also presented evidence of defendant's involvement in two other robberies at a nearby North End Liquor store, both of which were committed less than a month before the charged offense.

*People v. Walker,* No. 292041, 2011 WL 255291, at *1-2, (Mich. Ct. App. Jan. 27, 2011).

In Petitioner's first claim, he asserts that there was insufficient evidence to identify Petitioner as the robber. A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). In a habeas proceeding, however, the court cannot simply conduct a de novo review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA. Petitioner can be granted habeas relief only if the Michigan Court of Appeals unreasonably applied the *Jackson* standard. The court's task is "to determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential element of the crimes charged beyond a reasonable doubt. *See Nash v. Eberlin*, 258 Fed. Appx. 761, 765 (6th Cir 2007).

When reviewing whether the state court's determination was "objectively unreasonable," the court must engage in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if it is determined that there was sufficient evidence to convict Petitioner. If the court finds that the evidence is insufficient to convict, it must then apply the AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Petitioner guilty beyond

a reasonable doubt. *Id*. The law therefore "commands deference at two levels." *Tucker*, 541 F.3d at 656.

As the Michigan Court of Appeals noted, the store clerk, who had seen Petitioner visit the store as a customer before, identified Petitioner as the robber. Additionally, another witness saw Petitioner fleeing the scene and identified Petitioner as the robber. Clothing matching the description of what Petitioner wore during the robbery was found in Petitioner's residence, as was a gun. Petitioner admitted both were his. Thus, there was more than sufficient evidence to support a conclusion that Petitioner was the person who committed the robbery. The state appellate court's determination that this was sufficient evidence was not an unreasonable application of federal law. Petitioner is not entitled to relief on this issue.

In his second claim, Petitioner contends that the state trial improperly admitted other acts evidence detailing Petitioner's involvement in two other, similar robberies in violation of Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

The Michigan Court of Appeals addressed this claim in great detail in denying Petitioner's direct appeal, and concluded that the trial court did not abuse its discretion in allowing the evidence.

> We next address defendant's argument that the trial court erred in allowing the prosecutor to present evidence of the two North End robberies pursuant to MRE 404(b)(1). We review the trial court's decision for an abuse of discretion. *People v. Dobek,* 274 Mich App 58, 84-85; 732 NW2d 546 (2007). A trial court abuses its discretion when it chooses an outcome that is outside the principled range of outcomes. *People v. Blackston,* 481 Mich 451, 460; 751 NW2d 408 (2008).
>
> The prosecutor sought to admit evidence of robberies at the North End Liquor store on January 27 and February 5, 2008, to show that defendant was the person who robbed Tillie's on February 18, 2008. "Use of other acts as evidence of character is excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct." *Id.* For evidence to be admissible under MRE 404(b), it (1) must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. *People v. Knox,* 469 Mich 502, 509; 674 NW2d 366 (2004). MRE 404(b)(1) expressly allows other acts evidence to be introduced for

the purpose of proving identity. In this case, identity was the principal issue at trial.

In his discussion of relevancy, defendant focuses solely on identity proven through modus operandi, as delineated in the four-part test in *People v. Golochowicz,* 413 Mich 298, 307-309; 319 NW2d 518 (1982). "The *Golochowicz* test requires that "(1) there is substantial evidence that the defendant committed the similar act, (2) there is some special quality of the act that tends to prove the defendant's identity, (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice." *Waclawski,* 286 Mich App at 673 (citations and quotations omitted). We agree that the commonality of circumstances between the North End robberies and the charged offense are insufficient to satisfy the second prong of this test. The most that can be said in regard to the evidence is that the perpetrator wore similar, unremarkable clothing, committed the robberies within a relatively short period of time, and demanded cash while pointing a similar looking gun at the clerk. These commonalities are not "so unusual and distinctive as to be like a signature." *Golochowicz,* 413 Mich at 311.

However, the trial court did not abuse its discretion in admitting the evidence for the purpose of proving identity alone, and the admissibility of the evidence for that purpose is not dependent upon the *Golochowicz* test. As our Supreme Court explained in *People v. Crawford,* 458 Mich 376, 388-389; 582 NW2d 785 (1998):

> Pursuant to MRE 401, evidence is relevant if two components are present, materiality and probative value. Materiality is the requirement that the proffered evidence be related to "any fact that is of consequence" to the action. "In other words, is the fact to be proven truly in issue?" A fact that is "of consequence" to the action is a material fact. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial."
>
> It is well established in Michigan that all elements of a criminal offense are "in issue" when a defendant enters a plea of not guilty. Because the prosecution must carry the burden of proving every element

- 8 -

> beyond a reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements, the elements of the offense are always "in issue" and, thus, material. [Citations omitted.]

Here, defendant's identity as the person who committed the charged offenses was the principal issue in the case. Thus, the evidence was offered for a material purpose. In regard to the probative value of the evidence, the Court in *Crawford* stated:

> The probative force inquiry asks whether the proffered evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The threshold is minimal: "any" tendency is sufficient probative force. In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. If the prosecutor fails to weave a logical thread linking the prior act to the ultimate inference, the evidence must be excluded, notwithstanding its logical relevance to character. [*Id.* at 389-390 (citations omitted; emphasis in original).]

The North End store clerk, Cary Waters, testified that the February robbery was committed by a person who wore a tan coat, grey sweatshirt, black hat, and blue bandana similar to what was found at 10 Travis Street, where defendant was apprehended the night of the charged robbery. Further, Waters and the clerk at Tillie's, Michael Siwek, both testified that the perpetrator used a gun that looked like the gun recovered from 10 Travis. Defendant admitted that the clothing and gun recovered from that location belonged to him. The surveillance tapes from the February North End robbery and the robbery of the Tillie's store also show that the perpetrator's stature, race, gun, and clothing were similar. Further, ballistics testing connected a bullet cartridge that was recovered from the February North End robbery to the gun that was recovered from 10 Travis, which defendant admitted was his.

There was no witness testimony regarding the January North End robbery. Rather, the prosecution relied on the surveillance videotape of the incident, which shows that the perpetrator of both North End

> robberies wore similar if not identical clothing, and Waters's testimony supported an inference that that clothing was the same as that recovered from 10 Travis. Therefore, the evidence of the North End robberies made it more probable that defendant committed the instant robbery.
>
> Relying on MRE 609, defendant contends that the other acts evidence was unfairly prejudicial because it involved the same type of crime, a robbery, that was charged in this case. Defendant's reliance on MRE 609 is misplaced, however, because the evidence was offered as substantive evidence of defendant's identity, not as impeachment evidence. For evidence to be unfairly prejudicial under MRE 403, there must be a tendency that the evidence would be given undue or preemptive weight by the jury, or it must be inequitable to allow use of the evidence. *Blackston,* 481 Mich at 462. In this case, identity was the principal issue at trial. The North End robberies connected the perpetrator to defendant's clothing and gun found in the basement of 10 Travis, which was probative of defendant's identity, particularly given the slight differences in clothing worn by the perpetrator of the Tillie's robbery and the Tillie's clerk's limited basis for his identification. Given all the circumstances, we find no reason to disturb the trial court's finding that the probative value of the North End robberies was not substantially outweighed by the danger of unfair prejudice. *Waclawski,* 286 Mich App at 670.

*People v. Walker* 2011 WL 255291, 3 -6 (Mich. App., Jan. 27, 2011).

        In the opinion of the undersigned, the admission of other acts evidence in this case did not result in the denial of fundamental fairness. Because the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief on this issue.

        Petitioner's third claim is that the prosecutor committed misconduct by improperly using both pre-arrest and post-arrest silence against him. To constitute a denial of due process, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial. *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). Even if it is determined that the prosecutor's misconduct amounted to constitutional error, federal habeas relief may not be

granted unless such error "had substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 619, 637, 113 S Ct. 1710, 123 L. Ed. 2d 353 (1993), in turn quoting *Kottealkos v. United States,* 474 U.S. 750, 776, 66 S. Ct. 1239, 90 D. Ed. 1557 (1946)). To sustain a claim of prosecutorial misconduct, Petitioner must show that the alleged misconduct resulted in actual prejudice. *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1722 (1993), citing *United States v. Lane*, 474 U.S. 438, 449, 88 L. Ed. 2d 814, 106 S. Ct. 725 (1986).

> In addressing this issue, the Michigan Court of Appeals found:

> Defendant argues that the prosecutor impermissibly used defendant's post-arrest, post-*Miranda* [*v. Arizona,* 384 U.S. 436 (1966)] silence against him. "As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person." *People v. Shafier,* 483 Mich 205, 212; 768 NW2d 305 (2009). Thus, generally, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate the defendant's right to remain silent and due process rights. *Id.* at 212-213, citing *Doyle v. Ohio,* 426 U.S. 610, 618-620; 96 S Ct 2240; 49 L.Ed.2d 91 (1976). The only exception is where it is used for impeachment purposes, such as when a defendant tells an exculpatory story at trial and claims to have told the police the same version upon arrest. *People v. Borgne,* 483 Mich 178, 192; 768 NW2d 290 (2009). Thus, when a defendant testifies on his own behalf, he "may be impeached with both prearrest silence and postarrest pre- *Miranda* silence without violating the Fifth Amendment." *People v. Sutton (After Remand),* 436 Mich 575, 592; 464 NW2d 276 (1990), amended 437 Mich 1208 (1990).

> In this case, the prosecutor's questions on cross-examination in regard to whether defendant ever told anyone in law enforcement his version of events did not violate *Doyle.* Immediately before the questions, the prosecutor had elicited evidence that defendant had sent case materials to a fellow jail inmate asking him to propose several scenarios of what happened, and then defendant would tell him if he got it right. Viewed in context, it appears that the prosecutor's questions immediately before and after defendant's objection were intended to clarify whether defendant told the inmate his exculpatory story. The questions did not suggest that the jury infer guilt from defendant's post-arrest, post-*Miranda* silence. Thus, no *Doyle* violation occurred. Also, the questions were isolated and a cautionary

> instruction was immediately given. See *Shafier,* 483 Mich at 214-215 (no *Doyle* violation where an immediate objection concerning post-arrest, post-*Miranda* silence was made and a curative instruction was given); *People v. Dennis,* 464 Mich 567, 576-580; 628 NW2d 502 (2001) (brief and oblique reference to the defendant's post-arrest, post-*Miranda* silence did not violate *Doyle* where there was no attempt to "use" the defendant's silence against him).
>
> Further, the prosecutor's second question referred to the time at which defendant was removed from the house. This period, though brief, was pre-*Miranda,* so use of defendant's silence at that time was not impermissible. A defendant may be impeached by his prior failure to state a fact in circumstances in which that fact naturally would have been asserted. *People v. Alexander,* 188 Mich App 96, 103; 469 NW2d 10 (1991) (applies to pre-arrest and/or pre-*Miranda* silence). It would have been natural for an innocent person to denounce the charges for which he was arrested.
>
> Lastly, to the extent that the prosecutor's remark during closing argument could be considered a *Doyle* violation, it was harmless beyond a reasonable doubt. *People v. Miller,* 482 Mich 540, 559; 759 NW2d 850 (2008). The remark was brief and the trial court gave an immediate cautionary instruction. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham,* 256 Mich App at 279. In addition, given the overwhelming evidence against defendant independent of this remark, there is no reasonable possibility that it contributed to the jury's decision to convict. *People v. Hyde,* 285 Mich App 428; 775 NW2d 833 (2009).

*People v. Walker*, 2011 WL 255291, at **7-8 (Mich. App., Jan. 27, 2011).

In the opinion of the undersigned, the Michigan Court of Appeals' decision on this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on this issue.

In his fourth claim, Petitioner asserts that the cumulative effect of errors committed at trial entitle him to relief. However, "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson,* 460 F3d. 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir

2005)). Thus, even if any of the actions cited by Petitioner were errors, they are not cognizable as cumulative errors and provide no basis for relief. In any case, as the Michigan Court of Appeals noted, there were no errors to cumulate. *People v. Walker*, No. 292041, 2011 WL 255291, at *11, (Mich. Ct. App. Jan. 27, 2011). Therefore, Petitioner is not entitled to habeas relief.

As noted above, the Michigan Court of Appeals' decision on each issue raised by Petitioner did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice. In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. For the reasons listed above, the undersigned recommends that the court deny Petitioner a certificate of appealability.

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 23, 2014

**NOTICE TO PARTIES**:

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).